UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| MARTIN JACKSON, | : | Case No. 3:18-cv-251 |
| --- | --- | --- |
| Plaintiff, | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Martin Jackson brings this case challenging the Social Security Administration's denial of his application for Supplemental Security Income. He applied for benefits on December 4, 2014, asserting that he could no longer work a substantial paid job. Administrative Law Judge (ALJ) Mark Hockensmith concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record (Doc. #6).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Hockensmith's non-disability decision.

## II. Background

Plaintiff asserts that he has been under a "disability" since June 5, 2008. At the time of his application, he was fifty years old at that time and was therefore considered a person "closely approaching advanced age" under Social Security Regulations. *See* 20 C.F.R. § 416.963(d). He has a limited education. *See id.* § 416.964(b)(2).

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Hockensmith that he injured his left ring finger and as a result, cannot use his left hand. (Doc. #6, *PageID* #s 80-81). He had several surgeries to repair his finger. *Id.* However, his condition has stayed the same or, as he said, "I believe it's permanent because I was at the point of getting it cut off." *Id.* at 81. He is still in pain and wears a splint most of the time. *Id.* at 80-81. He drops things almost every day because he has trouble with his grip. *Id.* at 86.

Plaintiff also injured his right index finger—slamming it in a car door. *Id.* at 79. It is constantly in pain and there is nothing that can be done to fix it. *Id.* at 80. He is not able to make a tight fist. *Id.* He also has trouble buttoning his shirt. *Id.*

Additionally, Plaintiff has a seizure disorder. *Id.* at 82. His seizures are usually unexpected but, if he thinks one is coming, he tries to be around other people so they can help him. *Id.* When he wakes up from a seizure, he does not know where he is "for a little while." *Id.* During his most recent seizure, he "came out of it" when the

paramedics were there. *Id.* at 87. At the hospital, he laid in bed for an hour because he felt drained and it was hard to get up. *Id.* When he went back home, he had a second seizure that he does not remember at all. *Id.* at 88.

When Plaintiff walks, he runs out of breath. *Id.* at 85. Further, because he has been in a lot of car accidents, his "back is really tuckered out too." *Id.*

Plaintiff lives at his mother's house with two of his brothers. *Id.* at 77. He does not have a driver's license; his friends normally drive him around. *Id.* at 77-78. He goes to the grocery store but needs someone to go with him. *Id.* at 85, 87. During the day, he usually sits around and watches TV. *Id.* at 83. He sometimes has a hard time remembering what happened at the beginning of a TV show. *Id.* at 86. He also spends time with his brothers. *Id.* at 84. Sadly, one of his brothers recently died of cancer. *Id*. He helps with laundry. He puts clothes into the washing machine but his mom takes them out, folds them, and puts them away. *Id.* at 83-84. He sometimes forgets to move clothes from the washer to the dryer. *Id.* at 87.

**B.      Medical Opinions**

   *i.      Michael C. Rymer, M.D.*

Dr. Rymer, Plaintiff surgeon, completed a medical statement on June 22, 2016. He diagnosed left ring finger dislocation of unspecified interphalangeal joint and right index finger trauma with open wound. *Id.* He indicated that Plaintiff injured his left ring finger in March 2015. *Id.* at 1658. He first had surgery (ORIF) on July 16, 2015. *Id.* On August 20, 2015, Plaintiff underwent a second surgery to remove hardware. *Id.* And, he

had fusion surgery on March 31, 2016. *Id.* Plaintiff injured his right index finger in May 2016. *Id.*

Dr. Rymer opined Plaintiff could occasionally use his left and right hands for fine and gross manipulation. *Id.* He can occasionally lift and/or carry ten pounds. *Id.* He cannot frequently lift or carry any weight. Plaintiff's soft-tissue injury has been under continuing surgical management aimed towards restoring major function of his left hand. Major function of his left hand has not been restored or is not expected to be restored within 12 months of onset. *Id.* Plaintiff could not perform full-time competitive work on a sustained basis without missing work more than two times a month or being off task 15% of the workday due to his impairments, medical appointments, or treatment. *Id.* at 1659.

   ii.  *Anna Roetker, M.D.*

Dr. Roetker completed two basic medical assessments—one on December 3, 2015 and one on December 22, 2016. Her responses were essentially the same. She diagnosed allergic rhinitis, seizure, insomnia, and alcoholic liver disease. *Id.* at 652, 1912. He has had the seizure disorder since April 2012 and is on antiepileptics. *Id.* Likewise, his liver disease began in April 2012. *Id.* There is no treatment other than abstaining from alcohol. *Id.* His insomnia is recent, beginning in December 2015. *Id.* She opined that Plaintiff's health status is poor but stable. *Id.*

Dr. Roetker opined that Plaintiff could frequently lift and or carry up to five pounds. *Id.* at 651, 1913. His ability to handle is moderately limited. *Id.* She explained,

"Limitations due to safety concerns of seizure, not ability to perform task. He should not drive, operate machinery, or work with electricity." *Id.*

      *iii.*    *Amita Oza, M.D.*

Dr. Oza evaluated Plaintiff on March 5, 2015. She indicated that Plaintiff's "main problem is seizure disorder as well as his psych problems, which is depression." *Id.* at 542. He complained of back pain but there is no evidence of radiculopathy. *Id.* Additionally, he reported a history of cirrhosis of liver, pancreatitis, and weight loss. *Id.* However, there were not any notes in the accompanying records about cirrhosis and there was no evidence of end organ dysfunction. Dr. Oza concluded,

> Based on my examination, it appears that it is his psych problem and he is asking for pain medication continuously that is preventing him from working. Medically speaking, he has seizure disorder, but he can perform sedentary to light work in atmosphere where if he has seizure he would not be harmed or people around him are not harmed. He should not be working near heavy machinery, on the roof or on the ladder.

*Id.*

      *iv.*    *Juliette Savitscus, Ph.D., & Carl Tishler, Ph.D.*

Dr. Savitscus reviewed Plaintiff's records in April 2015 and found he had four severe impairments—major motor seizures; anxiety disorders; affective disorder; and alcohol, substance addiction disorder—and one non-severe impairment, "Other and Unspecified Arthropathies." *Id.* at 285. In July 2015, Dr. Tishler reviewed Plaintiff's records and affirmed Dr. Savitscus' assessment.

5

v.     *Michael Lehv, M.D., & Esberdado Villanueva, M.D.*

Dr. Lehv reviewed Plaintiff's records in April 2015. He opined Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently. *Id.* at 288. He could stand and/or walk for six hours in an eight-hour workday and sit for six hours. *Id.* Plaintiff can frequently stoop and never climb ladders, ropes, or scaffolds. *Id.* He should avoid all exposure to hazards such as machinery and heights. *Id.* at 289. Dr. Lehv concluded that Plaintiff is not under a disability. *Id.* at 292-93.

In August 2015, Dr. Villanueva reviewed Plaintiff's records and affirmed Dr. Lehv's assessment. *Id.* at 305-06, 309-10.

## III.  Standard of Review

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir.

2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Hockensmith to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the

7

five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

> Step 1: Plaintiff has not engaged in substantial gainful employment since December 4, 2014.
>
> Step 2: He has the severe impairments of seizure disorder, dislocation of left index finger with residuals of multiple surgeries, right index finger trauma, anxiety, depression, and alcohol abuse.
>
> Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to the following limitations: (1) no climbing ladders, ropes, or scaffolds; (2) frequent climbing of ramps and/or stairs; (3) frequent stooping; (4) no work at unprotected heights or with dangerous machinery; (5) no commercial driving; (6) no more than occasional handling and fingering using the left upper extremity; (7) no more than frequent handling and fingering using the right upper extremity; (8) limited to simple, routine tasks, performed in a static work environment with few changes in routine; (9) no fast paced work or strict production quotas; and (10), no direct dealing with the public."
>
> Step 4: He does not have any past relevant work.
>
> Step 5: He could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 45-64). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 64.

## V. Discussion

Plaintiff contends that the ALJ erred in weighing his treating physicians' opinions and no medical opinion reasonably supports the ALJ's appraisal of his lifting ability.

8

The Commissioner maintains that substantial evidence supports the ALJ's decision.

### A. Medical Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p,

1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

*Dr. Rymer*

ALJ Hockensmith assigned Dr. Rymer's opinion "partial weight." (Doc. #6, *PageID* #62). Although the ALJ disagreed with Dr. Rymer's opinions regarding Plaintiff's right hand, he generally agreed with Dr. Rymer's opinions concerning Plaintiff's left hand.

Looking first at limitations regarding Plaintiff's left hand, the ALJ found, "[Plaintiff's] left ring finger impairment is more significant and imposes somewhat greater functional restriction" than his right-index-finger impairment. *Id*. The ALJ pointed out that while Plaintiff wears a brace on his left ring finger, he does not use a brace or other device for the right index finger. Thus, the ALJ concluded, "Limiting [Plaintiff] to occasional use of the left hand for fine and gross manipulation is consistent with the record and entitled to significant weight." *Id.* ("The restriction to occasional fine and gross manipulation with the left upper extremity is supported by the evidentiary record and is adopted."). Similarly, the ALJ found it is appropriate to limit him to occasional handling and fingering with his left upper extremity.

Turning to Plaintiff's right hand, the ALJ noted that Dr. Rymer's opinion was given shortly after Plaintiff injured his right index finger. According to the ALJ, "the right index finger was simply a laceration and there is no evidence of use a more serious injury." *Id*. And, although Plaintiff reported pain, "records document appropriate

healing in the right index finger without surgery or other significant intervention." *Id.* (citing Exhibit 24F at 29-40).  Thus, the ALJ rejected Dr. Rymer's opinion that Plaintiff was restricted to occasional fine and gross manipulation with his right hand.  Further, the ALJ concluded that "a restriction to frequent fingering and handling with the right hand is appropriate." *Id.*

Further—the part Plaintiff takes issue with—the ALJ rejected Dr. Rymer's opinion that Plaintiff can only lift/carry ten pounds occasionally.  He gave a few reasons.  First, the record does not support a restriction to lifting ten pounds occasionally.  Second, "This restriction was issued approximately three weeks after the injury to the right index finger and would be appropriate at that time, but Dr[.] Rymer also reported that this injury should heal secondarily and subsequent treatment records do not document significant or more than minimal complaints regarding the right index finger." *Id.*  Finally, "The record simply does not document ongoing or additional objective or clinical findings consistent with significant limitations on [Plaintiff's] ability to lift and carry objects within the light exertional range." *Id.*

Plaintiff contends that the ALJ failed to "direct the reader to any specific treatment notes or records in support of his criticisms of Dr. Rymer's opinions[.]"  (Doc. #8, *PageID* #2030).  Plaintiff's argument lacks merit; the ALJ cites Dr. Rymer's treatment notes pertaining to Plaintiff's right index finger recovery.  (Doc. #6, *PageID* #62) (citing Exhibit 24F at 29-40 [Doc. #6, *PageID* #s 1894-905]).  For instance, on July 27, 2016, Dr. Rymer noted, "The patient is doing well with the right index finger."  (Doc. #6, *PageID* #1894).  Further, the ALJ discussed Dr. Rymer's treatment of Plaintiff's right

11

index finger in more detail at the beginning of his decision. *See id.* at 49 ("X-rays showed mild soft tissue swelling at the second PIP joint, but no acute fracture or dislocation. Examination showed an avulsion skin injury …. He saw Dr[.] Rymer for that injury on June 28, 2016, and examination noted healing of the wound, improved joint stiffness, intact sensation and tendon functioning, and no drainage or erythema.") (citing Doc. #6, *PageID* #1892); *see also* Doc. #6, *PageID* #1891.

Next, Plaintiff asserts that "the record expressly does 'document ongoing or additional objective or clinical findings consistent with significant limitations on the claimant's ability to lift and carry objects….'" (Doc. #8, *PageID* #2031) (quoting Doc. #6, *PageID* #62). According to him, "Plaintiff was suffering from such a severe and objectively documented pathology that Dr. Rymer himself performed four separate surgeries …" between July 2015 and February 2017. (Doc. #8, *PageID* #2031) (citing (Doc. #6, *PageID* #s 653-76, 1888-904). Plaintiff asserts, "It is unfathomable how ALJ Hockensmith could conclude that this extensively documented and ultimately undisputed hand pathology would not impose 'significant limitations on the claimant's ability to lift and carry objects….'" (Doc. #8, *PageID* #2031) (quoting Doc. #6, *PageID* #62).

While Plaintiff did undergo four surgeries on his left hand, the evidence does not show how or why that prevents him from lifting or carrying weight consistent with light work. Certainly, four surgeries are significant, but there is a lack of evidence connecting those surgeries to limitations in Plaintiff's ability to lift or carry. In between the third and fourth surgeries, Dr. Rymer opined Plaintiff could occasionally lift/carry ten pounds. (Doc. #6, *PageID* #1658). But Dr. Rymer does not explain why he cannot lift or carry

12

more than that.  Without an explanation, it is not possible to know why he believed Plaintiff was not able to lift more than ten pounds occasionally.  Was it because Plaintiff *recently* shut his right index finger in a car door?  Or was it because of his injuries to his left hand?  Unfortunately, Dr. Rymer's opinion provides no answers.  Given the ambiguity, the ALJ reasonably concluded that the evidence does not support Dr. Rymer's opinion.

At the end of his assessment of Dr. Rymer's opinion, the ALJ concludes, "Dr[.] Rymer's opinion is not supported fully by the evidentiary record and, therefore, is not entitled to controlling or deferential weight.  His opinion is entitled to partial weight for the reason[s] set forth herein." (Doc. #6, *PageID* #62).  Plaintiff asserts that the ALJ erred in requiring that Dr. Rymer's opinion be "supported fully."  And he is correct that a physician's opinion need not be fully supported to merit weight.  *See* Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (July 2, 1996) ("For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence.").  However, the ALJ previously set forth the correct standard for weighing a treating physician's opinion.  (Doc. #6, *PageID* #60).  Further, the ALJ's evaluation of Dr. Rymer's opinion prior to this "supported fully" conclusion does not suggest that the ALJ required Dr. Rymer's opinion to be fully supported in order for it to merit weight.  Thus, to the extent the ALJ erred, his error was harmless.

Plaintiff also asserts that the ALJ erred by failing to weigh Dr. Rymer's opinion that Plaintiff would be off task more than 15% of the day and would be absent more than

two times a month. This argument also fails. Dr. Rymer did not provide any explanation for this opinion. Thus, to the extent the ALJ erred in not addressing this opinion, his error was harmless. *See McGrew v. Berryhill*, No. 3:16-CV-220, 2017 WL 4324765, at *8 (S.D. Ohio Sept. 29, 2017) (finding that the ALJ properly gave less weight to the doctor's opinion that Plaintiff would miss several days of work per month due to treatment or symptoms "because it was, at best, speculative and primarily based on [Plaintiff's] subjective allegations.") (internal quotation marks) (citing *Wagers v. Comm'r of Soc. Sec.*, No. 1:15-CV-312, 2016 WL 4211811, at *7 (S.D. Ohio June 28, 2016) (Bowman, M.J.) *report and recommendation adopted*, 2016 WL 4194504 (S.D. Ohio Aug. 9, 2016) (Dlott, D.J.) ("The ALJ analyzed minute portions of the treating physicians' RFC opinions in unusual depth, and should not be penalized for failing to discuss her reasons for rejecting one discrete portion that offered a wholly speculative and unsupported and vague "estimate" that Plaintiff would be absent from work more than 3-4 days per month")) (other citations omitted).

*Dr. Roetker*

ALJ Hockensmith assigned "partial weight" to Dr. Roetker's opinions that Plaintiff was not limited in his ability to sit, stand, walk, or perform the other non-exertional requirements of work activity. The ALJ found that those opinions are consistent with the record. (Doc. #6, *PageID* #61). Further, "The limitation to occasional fingering and handling with the left upper extremity and frequent handling and fingering in the right upper extremity are consistent with Dr Roetker's opinion [that

Plaintiff had a moderate limitation in handling] and adequately accounted for that opinion." *Id*.

However, the ALJ rejected Dr. Roetker's opinion that Plaintiff could not lift more than five pounds. He found that the record does not support this limitation and "[t]here is no impairment of motor deficit in the upper or lower extremities." *Id*. The ALJ recognized that Plaintiff "has a history of bilateral index finger trauma, which has some effect on his ability to handle and finger objects, but would not prevent the ability to lift and carry up to 20 pounds occasionally in light of the otherwise normal findings." *Id*.

Plaintiff contends that the ALJ erred in finding that Plaintiff's ability to lift with his hands cannot be limited to the extent described by Dr. Roetker because there is no impairment of motor deficit. (Doc. #8, *PageID* #2032). "Plaintiff does not allege, Dr. Roetker does not opine, and the record does not indicate that a 'motor deficit' serves as a foundation for Plaintiff's struggles with lifting and carrying. Rather, the principal limiting factors are clearly the combination Plaintiff's well-documented and extreme pain with the reduced range of motion occasioned by his injury and subsequent surgeries." *Id.* (citation omitted).

Plaintiff's argument fails. Although Plaintiff is correct that Dr. Roetker does not opine that his limitations are associated with a motor deficit, she likewise does not opine that Plaintiff's struggles with lifting and carrying are associated with his pain and reduced range of motion. Indeed, Dr. Roetker does not mention Plaintiff's finger/hand pain or any reduced range of motion caused by finger injuries and surgeries. She only indicates that Plaintiff has four impairments: allergic rhinitis, seizure disorder, insomnia, and

15

alcoholic liver disease. Further, she opines, "Limitations due to safety concerns of seizure not ability to perform task. He should not drive, operate machinery or work with electricity." (Doc. #6, *PageID* #s 651, 1913).

The ALJ also rejected Dr. Roetker's opinion that Plaintiff is unemployable. The ALJ noted that her opinion is "not consistent with the record as restrictions against strenuous work activity and exposure to hazards more than adequately account for the functional limitations related to the claimant's seizure disorder." *Id.* at 61. Notably, although Dr. Roetker opined in December 2015 that her client is unemployable, in 2016, she responded "no" when asked, "After taking the appropriate history and performing the relevant examination, do you believe the individual is *unable* to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that … has lasted or can be expected to last for a continuous period of not less than nine months?" *Id.* at 651, 1913 (emphasis added). The question is somewhat confusing and thus it is not completely clear whether Dr. Roetker intended to opine that Plaintiff is or is not unable to engage in substantial gainful activity. Unfortunately, Dr. Roetker provided no additional explanation.

Nonetheless, whether Plaintiff is employable is a question reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d)(2). While the ALJ must still consider Dr. Roetker's opinion on this issue, the Social Security Administration "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *Id.* § 416.927(d)(3). And, in the present case, the ALJ considered Dr. Roetker's opinion

on Plaintiff's employability and ultimately concluded that her opinion is not consistent with the record and that restrictions adequately account for Plaintiff's seizure disorder.

### B. Plaintiff's Ability to Lift and Carry

Plaintiff also takes issue with ALJ Hockensmith's findings regarding his hand/finger impairments and their impact on his ability to lift and carry. (Doc. #8, *PageID* #s 2033-34). He points out that the ALJ rejects Dr. Rymer and Dr. Roetker's opinions on his ability to lift and carry. *Id.*; *see* Doc. #6, *PageID* #s 61-62. He also assigned "little weight" to the State agency record-reviewing physicians because they did not consider Plaintiff's finger injuries. He gave consultative examiner Dr. Oza's opinion moderate weight but she also did not consider Plaintiff's finger injuries. Thus, according to Plaintiff, "The end result is that no medical opinion evidence whatsoever supports ALJ Hockensmith's findings regarding the impact of Plaintiff's hand impairments on his ability to lift and carry objects." (Doc. #8, *PageID* #2033). Plaintiff maintains that the ALJ improperly interpreted raw medical data and impermissibly played doctor.

The ALJ is responsible for assessing an individual's residual functional capacity (RFC). 20 C.F.R. §§ 416.920(a)(4)(iv); 416.946(c). The RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' -- i.e., opinions about what the individual can still do despite his or her impairment(s)-- submitted by an individual's treating source or other acceptable medical sources." *Id.* (footnote omitted). "Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."

17

*Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)). "Moreover, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe*, 342 F. App'x at 157 (citing *Ford v. Comm'r of Soc. Sec.,* 114 F. App'x 194, 197 (6th Cir. 2004)).

In the present case, ALJ Hockensmith adequately considered Plaintiff's treating physicians' opinions and gave good reasons for rejecting their opinions regarding Plaintiff's ability to lift and/or carry. He likewise gave good reasons for the weight he assigned the record-reviewing and consulting physicians' opinions.

Further, the ALJ explained why he concluded Plaintiff was able to perform light work. He acknowledged that Plaintiff "has a left ring finger and right index finger impairment that reduce his ability to lift and carry heavy objects." (Doc. #6, *PageID* #57). Nevertheless, "the record documents no muscle weakness or neurological symptoms that would reduce further the ability to perform the basic exertional requirement of light work …." *Id.* The ALJ pointed out that Plaintiff's finger impairments have improved with treatment. *Id.* at 59. Further, "[Plaintiff] did not complain of significant difficulty lifting objects." *Id.* at 57. Dr. Rymer did not note that Plaintiff has decreased or limited grip strength or ability. *Id.* at 59. Moreover, his notes do not indicate that Plaintiff reported dropping thing. *Id.* Based on this evidence, ALJ Hockensmith reasonably concluded that Plaintiff was capable of performing light work.

The court's review of an ALJ's decision is limited to determining whether the ALJ applied the correct legal standard and whether the ALJ's decision is supported by

18

substantial evidence. *Gayheart,* 710 F.3d at 374. In the present case, ALJ Hockensmith applied the correct legal standards to determine Plaintiff's residual functional capacity. Substantial evidence supports the ALJ's decision.

## IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's non-disability decision be affirmed; and

2. The case be terminated on the Court's docket.

September 4, 2019 *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).